UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTIAN TAYLOR,

                          Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration.

                          Defendant.

CASE NO. 12-cv-05599 JRC

ORDER OF REMAND

        This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local

Magistrate Judge Rule MJR 13 (see also Notice of Initial Assignment to a U.S. Magistrate Judge

and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge,

ECF No. 7). This matter has been fully briefed (see ECF Nos. 19, 21).

        After considering and reviewing the record and hearing oral argument on September 18,

2013, the Court finds that the ALJ erred when reviewing the medical evidence. He failed to

properly discredit significant probative evidence from three mental health examiners, and failed

to account for their opinions in his Residual Functional Capacity Assessment.

1    Therefore, this matter shall be reversed and remanded pursuant to sentence four of 42

2    U.S.C. § 405(g) for further administrative proceedings.

3                                **BACKGROUND**

4    Plaintiff, Christian Taylor, was born in July, 1964. (Tr. 444).  He was 43 years old at the

5    time of the hearing. He has a high school education and has worked as a car salesman, cook/prep

6    cook, house manager, nurse, and receiving dock/laborer. (Tr. 242).  Mr. Taylor has a long history

7    of severe mental health impairments, stemming from a tragic upbringing.  Since the alleged onset

8    date, Mr. Taylor has alleged he has been unable to sustain competitive employment on a regular

9    and continuing basis due to a combination of impairments, including:  major depressive disorder,

10   recurrent, severe; anxiety disorder; insomnia; and chronic prostatitis. (Tr. 392, 418, 530).

11                             **PROCEDURAL HISTORY**

12   On February 2, 2009, plaintiff protectively filed applications for supplemental security

13   income ("SSI") pursuant to title XVI of the Social Security Act and Disability Insurance Benefits

14   ("DIB") (*see* Tr. 18, 193, 195). His application was denied initially on March 26, 2009 and

15   following reconsideration on July 15, 2009 (Tr. 102, 107). Plaintiff's requested hearing was held

16   before Administrative Law John P. Costello ("the ALJ") on February 16, 2011 (*see* Tr. 51-97).

17   On March 10, 2011, the ALJ issued a written decision concluding that plaintiff was not disabled

18   pursuant to the Social Security Act (Tr. 15-27).

19   May 9, 2012, the Appeals Council denied plaintiff's request for review, making the

20   written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20

21   C.F.R. § 404.981. In July, 2012, plaintiff filed a complaint in this Court seeking judicial review

22   of the ALJ's written decision (*see* ECF Nos. 3). Defendant filed the sealed administrative record

23   regarding this matter ("Tr.") on September 25, 2102 (*see* ECF Nos.10, 11).  In his Opening Brief,

24

1   plaintiff contends that the ALJ erred when reviewing the medical evidence as well as when

2   reviewing plaintiff's credibility and testimony (*see* ECF No. 19, p. 1).

3   **<u>STANDARD OF REVIEW</u>**

4        Plaintiff bears the burden of proving disability within the meaning of the Social Security

5   Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final

6   step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

7   Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*,

8   482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any

9   substantial gainful activity" due to a physical or mental impairment "which can be expected to

10  result in death or which has lasted, or can be expected to last for a continuous period of not less

11  than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the

12  Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous

13  work, and cannot, considering plaintiff's age, education, and work experience, engage in any

14  other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

15  1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

16       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

17  social security benefits if the ALJ's findings are based on legal error or not supported by

18  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

19  Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

20  more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

21  mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

22  750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also*

23  *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not

24

1   substantial evidence supports the findings by the ALJ, the Court should "'review the

2   administrative record as a whole, weighing both the evidence that supports and that which

3   detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per

4   curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine

5   independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is

6   supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006)

7   (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v.*

8   *Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

9           According to the Ninth Circuit, "[l]ong-standing principles of administrative law require

10  us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - -

11  not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."

12  *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*,

13  332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104,

14  1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*,

15  454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground

16  that the agency did not invoke in making its decision") (citations omitted). For example, "the

17  ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony."

18  *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In

19  the context of social security appeals, legal errors committed by the ALJ may be considered

20  harmless where the error is irrelevant to the ultimate disability conclusion when considering the

21  record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-

22  *36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout,*

23  *supra*, 454 F.3d at 1054-55.

24

1 | **DISCUSSION**

2 | 1. **The ALJ erred in his review of the medical evidence**.

3 | The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

4 | opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

5 | 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v.*

6 | *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion

7 | is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are

8 | supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing*

9 | *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by

10 | "setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

11 | stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing*

12 | *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

13 | An ALJ must explain why his own interpretations, rather than those of the doctors, are

14 | correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

15 | Cir. 1988)). In addition, the ALJ "may not reject 'significant probative evidence' without

16 | explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*,

17 | 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir.

18 | 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence."

19 | *Flores, supra*, 49 F.3d at 571.

20 | In general, more weight is given to a treating medical source's opinion than to the

21 | opinions of those who do not treat the claimant. *Lester, supra*, 81 F.3d at 830 (*citing Winans v.*

22 | *Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). On the other hand, an ALJ need not accept the

23 | opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by

24 |

clinical findings or by the record as a whole. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831); *see also* 20 C.F.R. § 404.1527(d)(2)(i). The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *Andrews, supra*, 53 F.3d at 1041).

**a. Dr. William T. Cox, D.O.**

The ALJ failed to credit fully Dr. Cox's limitation of plaintiff to sedentary work.  The ALJ noted that a Department of Social and Health Services (DSHS) evaluation assessed plaintiff at sedentary work capacity, but the ALJ found "that there was no medical support for that evaluation in light of a benign physical findings" (Tr. 21, 383-89).  The ALJ gave specific and legitimate reasons for rejecting Dr. Cox's limitation to sedentary work including that plaintiff

1   plays the electric guitar every day, he spends hours on the computer and Facebook and he

2   testified that he could type up to 20 minutes at a time.   He takes no medication for his wrist pain

3   other than aspirin and Ibuprofen.  Dr. Cox's restriction to sedentary work is not supported by any

4   particular findings, and ALJ properly found there is no support provided in Dr. Cox's analysis.

5   Therefore the ALJ's rejection of Dr. Cox's conclusions that plaintiff should be limited to

6   sedentary work is supported by substantial evidence in the record.

7       **b. Dr. Daniel M. Neims, Psy.D.,**.

8       Dr. Neims, an examining psychologist, provided a significant number of observations

9   regarding functional limitations for plaintiff.  Dr. Neims examined plaintiff on March 24, 2010

10  (Tr. 456-467) indicating he observed plaintiff's symptoms of dysphoria and that plaintiff's

11  dysphoria would have a moderate to markedly severe effect on plaintiff's work activities (Tr.

12  458). Dr. Neims indicated in his Mental Status Examination (MSE) among other results that

13  plaintiff's body odor was mild and his dentition was soiled (Tr. 464). He also indicated that

14  plaintiff's posture/motor activity was rigid and tense. Dr. Neims opined that the plaintiff's gross

15  motor behavior was mildly aberrant.

16      Dr. Neims rated plaintiff's global assessment of functioning (GAF) at 57 indicating that

17  the basis for this rating as, "MSE, ADL's and symptom severity" (Tr. 459).

18      Regarding specific functional limitations, Dr. Neims opined that plaintiff suffered from

19  mild to marked limitations in his cognitive abilities.   Although he noted no limitations in

20  understanding, remembering and following simple (one to two step) instructions and to

21  understand and remember complex, (more than two step) instructions (Tr. 60),  Dr. Neims also

22  noted moderate limitation in respect to plaintiff's ability to exercise judgment and make

23  decisions, and mild limitations in his ability to learn new tasks (Tr. 460).  Regarding social

24

1 factors, Dr. Neims opined the plaintiff suffered from moderate to marked limitation in his ability

2 to maintain appropriate behavior in a work setting (Tr. 460).  Dr. Neims also opined various

3 moderate limitations in dealing with social factors, such as the ability to respond appropriately to

4 and tolerate the pressures and expectations of a normal work setting and to care for self,

5 including personal hygiene and appearance.  Regarding this limitation Dr. Neims indicated

6 "please see the attached addendum."   Dr. Neims attached a narrative addendum to his MSE, as a

7 more detailed description.  Dr. Neims assessment of plaintiff indicated moderate difficulties with

8 activities of daily living such as hygiene, grooming, friends, socialization, and opined marked

9 impairment with respect to financial management (Tr. 457-67).

10        The ALJ indicated he was not crediting fully Dr. Neims opinion regarding the marked

11 difficulty with routine tasks; stating "it is uncertain that the claimant would indeed have marked

12 difficulty with routine tasks and maintaining appropriate behavior" (Tr. 24).   The ALJ did not

13 provide specific and legitimate reasons to reject Dr. Neims opinions.  Dr. Neims conclusions on

14 this subject were substantially the same as the conclusions that were reached by Dr. Griffin,

15 Ph.D. regarding the ability to understand and follow instructions and the ability to perform

16 routine tasks (Tr. 460, 471).  Both of them found that he had no limitation in following simple

17 instructions and had marked limitations in the ability to perform routine tasks (Tr. 460, 471).

18 The ALJ seems to say that if you can do one you can do the other, but we have two examining

19 psychologists that say, that's not the case. You can have no limitations in one area and still

20 marked limitations in another (Tr. 460, 471).  Therefore, the ALJ's conclusion that Mr. Taylor

21 could perform routine tasks has to be supported by something else. Yet the ALJ doesn't tell us

22 what that something else might be. He appears to be reaching his own conclusions regarding

23 what he says are inconsistencies in the opinions, which frankly do not appear to this Court, as

24

1    inconsistencies.   The ALJ did not provide specific and legitimate reasons for choosing his own

2    interpretations of the facts over the interpretations by two mental health care professionals. The

3    court concludes that the ALJ is providing his own medical opinion and interpretation of Dr.

4    Neims' and Dr. Griffin's conclusions that is not supported by substantial evidence in the record,

5    therefore, it is a legal error.  An ALJ must explain why his own interpretations, rather than those

6    of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d

7    418, 421-22 (9th Cir. 1988)).

8         Similarly, the ALJ failed to credit fully Dr. Neims opinion regarding social factors; such

9    as Dr. Neims opinion of up to marked limitations maintaining appropriate behavior in the work

10   place. The ALJ concluded that Dr. Neims' MSE was inconsistent with Dr. Neims' interpretation

11   of the examination that Dr. Neims administered. The ALJ did this with a few notations to

12   plaintiff's intact speech.  Although it was mildly rambling and congenital, plaintiff had been

13   clean of heroin for 70 days and presented as somewhat disheveled, rigid, and tense     (Tr. 24).

14   These are facts and findings known or assessed by Dr. Neims and the ALJ has not demonstrated

15   any inconsistencies between the findings and Dr. Neims' conclusions regarding marked

16   limitations.  Although an ALJ may rely on inconsistencies within a doctor's report, they must be

17   legitimate inconsistencies, not merely a reinterpretation of a Mental Status Examination.

18         Mental impairments are treated differently by the Social Security rulings. Mental

19   impairments are not always easily understandable or measurable.  It requires the experience of

20   clinicians who attend to details and subtlety in behavior in making these evaluations.   When an

21   ALJ seeks to discredit a medical opinion he must explain why his own interpretation rather than

22   those of the doctor are correct. *Reddick, supra*, 157 F.3d at 725.

23

24

1   "But judges, including administrative law judges of the Social Security Administration, must be

2   careful not to succumb to the temptation to play doctor. Judges, including Administrative Law

3   Judges of the Social Security Administration, must be careful not to succumb to the temptation to

4   play doctor.  The medical expertise of the Social Security Administration is reflected in

5   regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead;

6   lay intuitions about medical phenomena are often wrong."  *Schmidt v. Sullivan*, 914 F.2d 117,

7   118 (7th Cir. 1990).

8          For the reasons stated the Court concludes that the ALJ failed to provide specific and

9   legitimate reasons supported by substantial evidence in the record as a whole for his failure to

10  credit fully the opinion of Dr. Neims.  Reinterpreting the MSE is not within the province of the

11  ALJ.  Adopting Dr. Neim's opinion likely would alter the plaintiff's RFC.  The ALJ did not

12  provide for any limitation in plaintiff's RFC on his ability to perform routine tasks, in his ability

13  to maintain appropriate behavior in the workplace, nor in his ability to respond appropriately to

14  and tolerate the pressures and expectations of a normal work setting.  Therefore, the ALJ's error

15  is not harmless error and it potentially affected the ultimate determination regarding disability.

16          **c. Dr. Enid Griffin, PhD.**

17          Dr. Griffin examined plaintiff on October 5, 2010 (Tr. 468-477).  She observed plaintiff's

18  symptoms of depression and anxiety but not his symptoms of food issues, anger and irritability

19  (Tr. 469).  Dr. Griffin opined that plaintiff's depression would have a moderate to marked effect

20  on the plaintiff's work activities due to a lack of problem solving skills, lack of motivation, and

21  lack of effective communication skills. (Tr. 469)  Dr. Griffin opined that his anxiety would have

22  a moderate effect on his ability to work by means of "lack of coping and self-soothing skills, lack

23

24

1   of effect of regulation" (Tr. 469). She opined plaintiff's mental health issues predated plaintiff's

2   substance issues.

3         Dr. Griffin also provided specific opinion regarding plaintiff's ability to function in a

4   work environment (Tr. 471).  She opined that plaintiff suffered from marked limitations in his

5   cognitive ability to exercise judgment and make decisions, as well as perform routine tasks. She

6   also opined marked limitations in plaintiff's social ability to respond appropriately to and tolerate

7   the pressures and expectations of a normal work setting (Tr. 471).

8         Contrary to the ALJ's finding that the MSE was "largely normal" Dr. Griffin noted that

9   plaintiff's mood was depressed and his effect was anxious (Tr. 476).   Regarding concentration,

10  Dr. Griffin indicated the plaintiff had errors in his completion of serial seven's testing.  Dr.

11  Griffin assessed plaintiff as impaired in is activities of daily living, noting his problems

12  budgeting, his lack of social support and his problems with transportation and specifying that he

13  took the bus (Tr. 477).  Regarding concentration, Dr. Griffin indicated that he had problems due

14  to mind wandering (*id.*).  She opined the plaintiff's symptoms may increase when he

15  decompensated (*id.; see also* Tr. 474-476).

16        The ALJ again made his own interpretation of plaintiff's MSE and called it largely

17  normal and then indicated the plaintiff's activities of daily living did not appear restricted,

18  although Dr. Griffin opined that they were restricted and impaired.  Importantly, the ALJ did not

19  indicate that he rejected Dr. Griffin's opinions of marked limitations in plaintiff's ability to

20  exercise judgment and make decisions, perform routine tasks, and respond appropriately to and

21  tolerate the pressures of a normal work setting (Tr. 24, 471).  Yet, these opinions were not

22  adopted into the ALJ's RFC and were substantially the same as Dr. Neims.

23

24

1    Defendant argued that Dr. Griffin's limitations were incorporated into the ALJ's RFC.

2    To the contrary, plaintiff's attorney asked the vocational expert to assume a person with

3    plaintiff's age, education, and vocational background who has a marked level of impairment in

4    the ability to perform routine tasks and the ability to respond appropriately to and tolerate to

5    expectations and pressures of a normal work setting.[1]   The Vocational Expert testified such an

6    individual would not be able to maintain competitive employment (Tr. 92).   The ALJ raised an

7    objection stating plaintiff's counsel would have to define marked (Tr. 92).   The ALJ did not then

8    attempt to incorporate any of those conclusions into his RFC.

9    When it comes to an RFC, it is the administration's burden to make the RFC finding, it is

10   not the plaintiff's. Although the plaintiff has the burden of proving disability, when it comes to

11   preparing an RFC, the administration has to do it. If the ALJ felt that the information he was

12   given was ambiguous, and certainly based on the information we have in the transcript it appears

13   that he felt that way, then it was incumbent on the ALJ to do further investigation. The ALJ

14   chose not to do that.   There are other areas where mild, moderate, marked, severe, and extreme

15   are terms that are used by the Social Security Administration in evaluating disabilities.  *See* 20

16   CFR 404.1520a(c)(4).   The Social Security Administration uses these terms in adjudicating

17   claimant's disabilities; there is no reason why these couldn't be flushed out by the ALJ if he felt

18   that the information he was receiving was inexact. The Court notes that the commissioner may

19   not reject significant probative evidence without explanation. *See Flores v. Shalala*, 49 F.3d 562,

20   570-71 (9th Cir. 1995).   Here the Vocational Expert was able to answer the hypothetical based

21   on marked impairments (Tr. 92).   When the Vocational Expert can understand the question and

22

23

24   [1] This hypothetical to the VE was based on the limitations opined by Dr. Griffin (Tr. 471).

1    answer based on the expert's specialized knowledge, the ALJ's written decision must state

2    reasons for disregarding such evidence. *See Flores, supra*, 49 F.3d at 570-71.

3           There is significant probative evidence from both examining psychologists that  largely is

4    consistent, that was not discussed in any great detail by the ALJ and certainly not incorporated

5    into his RFC.  As the ALJ failed to credit Dr. Griffin's opinion of marked limitations, which are

6    significant probative evidence, and did not provide any reason for his failure to adopt such

7    limitations into plaintiff's RFC, the ALJ again committed error in his review of the medical

8    evidence.  Like the error in his assessment of Dr. Neims' opinion, the court also concludes that

9    the ALJ's error in his assessment of the medical evidence provided by Dr. Griffin is not a

10   harmless error as the ALJ did not provide for any limitations in plaintiff's RFC on his ability to

11   exercise judgment make decisions; perform routine tasks; and respond appropriately to and

12   tolerate the pressures and expectations of a normal work setting. Therefore the ALJ's error is not

13   harmless error.  For these reasons, this matter must be reversed.

14          **d.  Mr. Christopher Clark, MEd, LMHC**

15          Mr. Christopher Clark examined Mr. Taylor and provided lay evidence or other medical

16   source evidence (Tr. 391-396).  An ALJ may disregard opinion evidence provided by these other

17   sources only if the ALJ gives reasons germane to each witness for doing so.  *Turner v.*

18   *Commissioner,* 613 F. 3d 1217 (9th Cir. 2010); SSR 06-03p.  Mr. Clark opined that the plaintiff

19   suffered from a number of moderate limitations as well as marked limitation in his ability to

20   understand, remember, and follow complex instructions and to respond appropriately to and

21   tolerate the pressures and expectations of a normal work setting (Tr. 393).  During his mental

22   status evaluation, Mr. Clark observed plaintiff's tense posture, limited eye contact, restless body

23   movement and his clear but rapid and pressured speech (Tr. 395). Mr. Clark also assessed

24

1   plaintiff's affect as apprehensive and anxious (Tr. 393, 395). Mr. Clark also opined that

2   plaintiff's judgment and memory were fair; that plaintiff's thought content was obsessive and

3   depressive; his train of thought was congenital and circumstantial; and, his attention and

4   concentration was poor (Tr. 396).

5          The ALJ discussed Mr. Clark's observations and opinions in part (Tr. 23-24). The ALJ

6   indicated that Mr. Clark's assessment was "consistent with the mental status report at that time

7   and merits a fair amount of weight" (Tr. 23-24, (*citing* Tr. 395- 396)). However, the ALJ failed

8   to provide any reason to discount Mr. Clark's assessment of marked limitations in his ability to

9   understand, remember, and follow complex instructions; and to respond appropriately to and

10  tolerate the pressures and expectations of a normal work setting (Tr. 393).

11         As the ALJ failed to provide a germane reason as to why Mr. Clark's opinions and

12  limitation were not incorporated in the plaintiff's RFC, this lay evidence provides another reason

13  as to why this matter must be reversed and remanded.

14         2. **Plaintiff's testimony and credibility must be evaluated anew following remand of**

15  **this matter**.

16         This Court already has concluded that the ALJ failed to consider the medical evidence

17  properly in this matter, *see supra*, section 1. In addition, a determination of a claimant's

18  credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c).

19  Therefore, the Court concludes that plaintiff's testimony and credibility must be assessed anew

20  following remand of this matter.

21         3. **This matter should be reversed and remanded for further proceedings.**

22         Generally when the Social Security Administration does not determine a claimant's

23  application properly, "'the proper course, except in rare circumstances, is to remand to the

24

agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  It is appropriate when:

> the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved.  *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court.  *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** for plaintiff and the case is closed.

Dated this 6th day of November, 2013.


J. Richard Creatura
United States Magistrate Judge